1

2

3

4

5

6

7

8                  IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN JORDAN,

11              Plaintiff,              No. CIV S-03-1820 LKK KJM P

12        vs.

13   CAL A. TERHUNE, et al.,           ORDER AND

14              Defendants.            FINDINGS AND  RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prison inmate proceeding pro se with a civil rights action.

17   Defendants Armoskus, Boitano, Brown, Cobb, Cox, Dreith, Eder, Felker, Fleming, Kopec,

18   McCraw, Miranda, Platt, Vanderville, Wong and Wright have filed a motion for summary

19   judgment.[1]  Defendant Rohlfing has filed a separate motion for summary judgment and a motion

20   to strike plaintiff's surreply.  Throughout these findings and recommendations, the court will

21   refer to the documents by docket number and appropriate exhibit designation.  When an exhibit

22   consists of multiple pages, the court will rely on the Bates-stamped page numbers assigned by the

23   parties or by the numbers assigned by the CM-ECF system, when the parties have not paginated

24   the exhibits.  According, defendant Rohlfing's motion for summary judgment is docket no. 186.

25   _____

26          [1]  Defendant McGuire is listed in this motion; however, the claims against him were
     dismissed in Docket No. 163.

1

1  The motion for summary judgment filed by Armoskus, Boitano, Brown, Cobb, Cox, Dreith,

2  Eder, Felker, Fleming, Kopec, McCraw, Miranda, Platt, Vanderville, Wong, and Wright is

3  comprised of docket nos. 188 through193-2, which includes various subparts.  Plaintiff's

4  opposition to the motion for summary judgment is comprised of docket nos. 223 through 223-8.

5  Defendant Rohlfing's reply is docket no. 224; the other defendants' reply is docket no. 225.

6  Plaintiff's surreply is docket no. 226.  Defendant Rohlfing's motion to strike is docket no. 227.

7  I.  <u>Preliminary Matters</u>

8          Plaintiff has not provided sufficient information to allow the Marshal to effect

9  service on defendants Lopez and Mericle, for whom the court found service appropriate.  <u>See</u>

10  Docket Nos. 89, 95, 98, 141, 151.  Dismissal of the action as to defendants Lopez and Mericle is

11  therefore appropriate.  Fed. R.Civ. P. 4(m).

12          Defendants object to plaintiff's exhibits attached to his opposition to the motions

13  for summary judgment on the ground that the exhibits are largely irrelevant and are not certified

14  or otherwise authenticated.  Docket No. 224 at 2; Docket No. 225 at 2.

15          A court may consider only admissible evidence in ruling on a motionfor summary

16  judgment.  <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002).

> 17/18/19  Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims.  Fed. R. Evid. 901(a) . . . [U]nauthenticated documents cannot be considered in a motion for summary judgment.

20  <u>Id.</u>; <u>Hal Roach Studios v. Richard Feiner and Company, Inc</u>., 896 F.2d 1542, 1550 (9th Cir.

21  1989) <u>Canada v. Blain's Helicopters, Inc.</u>, 831 F.2d 920, 925 (9th Cir.1987) (unauthenticated

22  documents may not be relied upon to defeat a motion for summary judgment).

23          Plaintiff's attempts to authenticate a variety of incident reports and medical

24  records through a his declaration is unavailing:  "A document can be authenticated [under Rule

25  901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so."  <u>Orr</u>, 285 F.3d at

26  774 n.8; Docket No. 223 at 103-105.

1         Nevertheless, to the extent that plaintiff relies on prison medical records which

2    have been submitted in properly authenticated form by defendants, the court will rely on them.

3    Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550-51 (9th Cir.1990)

4    (use of unauthenticated documents was harmless error where both sides relied on the same

5    documents and one side had authenticated the documents).  Moreover, to the extent that records

6    from plaintiff's central file and medical records may be authenticated as provided by Federal

7    Rule of Evidence 901(b)(3) &(4), the court will consider them.  In resolving these motions, the

8    court will cite only those documents it finds to be properly authenticated, whether offered by

9    plaintiff or the defendants.  Moreover, the court will not rely on those portions of any

10   declarations not based on the affiant's personal knowledge and do not contain hearsay.

11        As both defendant Rohlfing and the grouped defendants have observed, plaintiff

12   has filed over 700 pages in opposition to the two motions for summary judgment and has done

13   little to point the parties and the court to those portions of the exhibits relevant to the particular

14   claims.  For example, plaintiff refers the reader to an exhibit A; exhibit A, however, is ninety

15   pages long.  It is not the court's "obligation to mine the full record . . ." to find the exact portion

16   of each lengthy exhibit which supports plaintiff's argument.  Schneider v. TRW, Inc., 938 F.2d

17   986, 990 n.2 (9th Cir. 1991).  Nevertheless, the court has reviewed the exhibits and in the

18   following discussion of the merits of the motion will identify those portions it finds to be

19   adequately authenticated or otherwise in compliance with the requirements of Rule 56.

20        Moreover, much of plaintiff's evidentiary support is simply not relevant to the

21   issues at hand.  Although plaintiff explains that some of the unauthenicated outside medical

22   records are offered to show a preexisting back injury which, he claims, was aggravated, or to

23   demonstrate his long-standing eye problems and sensitivity to the light, these records have

24   minimal relevance to a determination whether particular actions resulted in a denial of medical

25   care or whether bright lights during a particular time-frame caused plaintiff pain.  The defendants

26   do not contest plaintiff's underlying medical conditions.

1     By way of further example, sixty pages of Docket No. 223-4, Ex. B-1, are
2  handwritten copies and photocopies of sections of the California Penal Code, Title 18 of the
3  United States Code, and the Bill of Rights.  Thirty two pages of Docket No. 223-3, Ex. A-6, are
4  portions of Title 15 of the California Code of Regulations, governing the prisons.  Under Local
5  Rule 5-133(j), it is necessary to attach copies of cases or statutes only when those authorities
6  have not been published, reported or codified; the authorities plaintiff has provided are easily
7  available.  Plaintiff has neither explained why he has attached these materials nor referred to
8  them in his points and authorities.

9     Another forty-five pages of material relate to an incident in 1996, when prison
10 officials confiscated a business plan plaintiff had prepared in an attempt to launch a business
11 selling tee shirts and sweatshirts.  Docket No. 223-6, Ex. B at 7-52.  Plaintiff has not clearly
12 explained the relevance of these materials to the resolution of the issues presented in the
13 summary judgment motions

14     In the order lifting the previously imposed page limits to allow plaintiff to file a
15 lengthy opposition, the court warned plaintiff that this did not give plaintiff license to file
16 irrelevant materials.  Docket No. 213.  Plaintiff will be given the opportunity to explain why he
17 should not be subject to sanctions for failure to observe the court's prior warning.

18 II.  Motion To Strike

19     Defendant Rohlfing has filed a motion to strike plaintiff's surreply to the replies
20 to the opposition to the motions for summary judgment.

21     When a party has raised new arguments or presented new evidence in a reply to an
22 opposition, the court may permit the other party to counter the new arguments or evidence.  El
23 Pollo Loco v. Hashim, 316 F.3d 1032, 1040-41 (9th Cir. 2003).  Defendants' reply does not
24 present new arguments nor new evidence; they simply note the problems with plaintiff's
25 evidentiary support.  The surreply is improper.
26 /////

4

III.  Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

1   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6   1436 (9th Cir. 1987).

7           In the endeavor to establish the existence of a factual dispute, the opposing party

8   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13  committee's note on 1963 amendments).

14          In resolving the summary judgment motion, the court examines the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26  /////

1    On August 17, 2006, the court advised plaintiff of the requirements for opposing a

2  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v.

4  Eikenberry, 849 F.2d 409 (9th Cir. 1988).

5    Because of the number of defendants and claims joined in this litigation, the court

6  will not provide a single statement of undisputed facts but rather will address the facts and law

7  relating to the discrete claims in separate sections of this document.

8  IV. The Incident Of October 29, 2001

9    On October 29, 2001, plaintiff hurt his back while exercising on the yard; with the

10  assistance of two other inmates, he made it to a bench by the yard gate.  Am. Compl. ¶ 51.[2]

11  When clinic personnel were ready to examine plaintiff, defendant McGraw had two inmates help

12  plaintiff to the clinic because plaintiff claimed he could not walk.  Docket No. 193-2, Ex. F at 2.

13  (Declaration of K. McCraw); Docket No. 223, Ex. A at 72 (Declaration of James Wilson);

14  Docket No. 223, Ex. A at 73 (Declaration of Michael Thomas).  Plaintiff was laid on a bench,

15  while he waited to be examined.  Am. Compl. ¶ 51.  However, when Dr. Mericle asked him to

16  stand to be examined, plaintiff responded that he just needed some muscle relaxers and a week-

17  long lay-in.  Docket No. 193, Ex. B-1 at 4 (medical progress note).  Plaintiff then said he could

18  not stand.  Dr. Mericle did not observe signs of chronic pain.  Docket No. 193, Ex. B-1 at 4.[3]

19  /////

20

21    [2]  The amended complaint is submitted under the penalty of perjury, so the court relies on

22  it as an affidavit, but only to the extent that the observations are within plaintiff's knowledge and
sufficiently detailed.  Moran v. Selig, 447 F.3d 748, 759 n.16 (9th Cir. 2006).

23    [3]  In the declaration submitted by defendants McCraw and Eder and in plaintiff's

24  declaration and his amended complaint, the parties report Dr. Mericle's statements and advice.
The court does not consider these hearsay statements.  However, defendants have submitted a

25  portion of plaintiff's medical records with the declaration of the custodian of those records; those
records include Dr. Mericle's observations, which this court may consider in resolving the

26  motion for summary judgment.  Fed. R. Ev. 803(6); United States v. Duncan, 919 F.2d 981, 985-
986 (5th Cir. 1990).

When defendants McCraw and Eder arrived at the clinic in a response to a call from clinic personnel, plaintiff was yelling obscenities at the medical staff and asking for pain pills.  Docket No. 193-2, Ex. G ¶ 2 (Declaration of J. Eder); Docket No. 223, Ex. A at 104 ¶ 7 (Declaration of John Jordan).  Plaintiff refused to identify himself to Eder, but instead let out a piercing whistle.  Docket No. 193-2, Ex. G ¶ 2.  Eder told plaintiff he could have to leave the clinic, but plaintiff began to whistle loudly and yell.  Docket No. 193-2, Exs. Ex. F ¶ 4 & G ¶ 2; Docket No. 193, Ex. B-1 at 4.  McCraw reiterated that plaintiff would be handcuffed and returned to his cell.  Docket No. 193-2, Exs. F ¶ 4 & G ¶ 3.  Plaintiff refused to stand up.  Id. Eder and McCraw took plaintiff by the arms and dragged him part of the way or the entire way to a wheelchair.  Compare Docket No. 223, Ex. A at 104 ¶¶ 8-9 (plaintiff avers he did not sit or stand and was dragged to the wheelchair) with Docket No.  193-2, Ex. F ¶ 4 (plaintiff sat up to be handcuffed and supported himself briefly, then went limp and so officers dragged him) and Docket No. 193, Ex. B-1 at 4 ("he was sitting flexed very well, showing no sign of back spasm, showing good ROM").

When they reached the cell, plaintiff said he could not stand, so Eder and McCraw took his arms, lifted him to his feet, dragged him from the wheelchair and lowered his chest onto his bunk and his knees on the floor.  Docket No. 193-2, Exs. F ¶ 5 & G ¶ 4; Docket No. 223, Ex. A at 104 ¶ 10.[4]

Plaintiff avers that this treatment aggravated his preexisting back injury, rendering him unable to move without assistance for several days after the incident and causing him to suffer recurring problems.  Am. Compl. ¶¶ 60-61.

/////

/////

---

[4]  In the amended complaint, plaintiff avers that the officers left him face down on the floor.  Am. Compl. ¶ 58; see also Docket No. 223, Ex. A at 74 (Declaration of Dion Anderson) (officers laid plaintiff out on the floor).

1       A.  <u>Denial of Medical Care</u>

2          In <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), the Supreme Court held that

3   inadequate medical care did not constitute cruel and unusual punishment cognizable under

4   section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious

5   medical needs."  As the Ninth Circuit has explained, "[i]ndifference may appear when prison

6   officials deny, delay or intentionally interfere with medical treatment . . . ." <u>Jett v. Penner</u>, 439

7   F.3d 1091, 1096 (9th Cir. 2006).  In <u>Gill v. Mooney</u>, 824 F.2d 192 (2d Cir. 1987), for example,

8   the Second Circuit found that the inmate stated an Eighth Amendment claim against a

9   correctional officer who refused to allow plaintiff to spend additional time in the gym as directed

10  by the prison doctor as a way of dealing with the prisoner's back problems.

11         This case is different.  Although defendants have not proffered admissible

12  evidence of Dr. Mericle's evaluation of plaintiff's condition, neither has plaintiff proffered

13  evidence that medical treatment was ordered and that defendants subsequently interfered with

14  that order.  Plaintiff does assert he told defendants that his back injury was "pre-existing and that

15  the prescribed treatment was pain pills, muscle relaxers and rest," Docket No. 223, Ex. A at 104

16  ¶ 7, but provides nothing suggesting that these two correctional officers had any authority to

17  provide him with this treatment in the absence of a doctor's orders.

18         Although the court will not rely on Dr. Mericle's statements for their truth – to

19  show plaintiff was exaggerating the severity of his back problem – the court will rely on the fact

20  that Dr. Mericle told Eder and McCraw that plaintiff had refused to be examined and that he

21  believed plaintiff could walk.  <u>See</u>, <u>e.g.</u>, Docket No. 193-2, Ex. F ¶ 4.  Plaintiff has presented

22  nothing suggesting these defendants had any medical knowledge that would give them a basis to

23  question the doctor's evaluation or had any reason to doubt the doctor's description of plaintiff's

24  refusing treatment.  <u>See Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993) (officials not liable

25  for failing to respond to letters about medical treatment because "neither. . . is a physician" and

26  could rely on the the fact that inmate had seen prison doctor).  Their decision to return plaintiff to

1   his cell, based on what they heard from Dr. Mericle, does not meet the subjective component of

2   the deliberate indifference standard.  Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1188

3   (9th Cir. 2002).

4        B.  Excessive Force

5          Determining whether an Eighth Amendment violation has occurred depends on

6   the context in which the action takes place.  Deference is to be given to the quick decisions

7   officers must make when responding to a confrontation with "riotous inmates."  Whitley v.

8   Albers, 475 U.S. 312, 320-322 (1986).  A deferential standard applies even in the case of "a

9   lesser disruption," so long as it is necessary for guards to use force to keep order.  Hudson v.

10  McMillian, 503 U.S. 1, 6 (1992).  In the case of resistance, the determinative question is

11  "whether force was applied in a good faith effort to maintain or restore discipline or maliciously

12  and sadistically for the purpose of causing harm."  Id. at 7.

13         The Ninth Circuit has relied on the Hudson factors in determining whether an

14  officer's application of force was undertaken in a good faith effort to restore discipline or

15  maliciously and sadistically to cause harm.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir.

16  2003).  These factors are: 1) the extent of the injury suffered by an inmate; 2) the need for

17  application of force; 3) the relationship between that need and the amount of force used; 4) the

18  threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the

19  severity of a forceful response.  Id.  According to the Ninth Circuit, Hudson mandates that the

20  Whitley standard apply in all claims of excessive force against prison officials.  LeMaire v.

21  Maass, 12 F.3d 1444, 1453 & n.2 (9th Cir. 1993).

22         An Eighth Amendment violation may be established even in the absence of

23  significant injury.  Hudson, 503 U.S. at 9.  "When prison officials maliciously and sadistically

24  use force to cause harm, contemporary standards of decency always are violated."  Id.  However,

25

26

1   the deprivation, meaning the use of force,[5] must be more than de minimis.  Id. at 9-10.  The

2   extent of the injury is therefore relevant to determine if the use of force is more than de minimis.

3   Id. at 7 ("The absence of serious injury is therefore relevant to the Eighth Amendment inquiry,

4   but does not end it.").

5          Plaintiff does not dispute the accounts from Mericle, Eder and McCraw that he

6   was being disruptive, by whistling and yelling, in the medical clinic.  Moreover, there is no

7   dispute that plaintiff refused to walk, whether because he was unable or unwilling to, when asked

8   to leave the clinic.  Under Hudson, this court defers to McCraw and Eder's decision to use force,

9   to drag plaintiff to a wheelchair and, as a result, to keep order in the clinic.  Plaintiff has not

10   undercut defendants' showing that the use of force was undertaken in a good-faith effort to

11   restore order in the clinic.

12          Whether McCraw and Eder propped plaintiff on his bunk or laid him face down

13   on the floor is in dispute, but the dispute is not material.  Plaintiff does not allege he was thrown

14   roughly to the floor; if this act can be considered force, it is that de minimis application the

15   Hudson court found to be outside Eighth Amendment jurisprudence.  Hudson, 503 U.S. at 9-10.

16   V.  Plaintiff's Placement In Segregation–November, 2001

17          Plaintiff was placed in administrative segregation in November 2002, pending

18   investigation of his alleged ties to the Black Guerilla Family (BGF), a prison gang.  Am. Compl.

19   ¶¶ 29, 32; Docket No. 190, Ex. A-1 at 111 (Ad Seg placement notice).  On November 18, 2003,

20   defendant Wright presided over a hearing and denied plaintiff's requests for a copy of the

21   evidence against him, the assistance of a staff member, and the ability to present documentary

22   evidence and call witnesses.  Am. Compl. ¶¶ 43-45.

23   /////

24   /////

25

26          [5] The Ninth Circuit has recognized that the Hudson standard focuses on the nature of the force used.  Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

1    On November 21, 2002, plaintiff appeared before the Institutional Classification

2    Committee (ICC), composed of defendants Felker, Wright, Kopec, Boitano and Fleischman; he

3    says his requests to present documentary evidence and call witnesses, for a copy of the evidence

4    against him and for a staff assistant were denied.  Docket No. 191-3, Ex. A-1 at 170

5    (Classification Chrono); Am. Compl. ¶ 44.  Plaintiff repeated his requests at a subsequent

6    hearing before defendants Wong and Platt, who told plaintiff nothing could be done until the

7    LEIU (Law Enforcement Investigative Unit) acted. Docket No. 191, Ex. A-1 at 148; Am. Compl.

8    ¶ 46.

9    Plaintiff was released back to general population on February 13, 2003.  Docket

10   No. 191, Ex. A-1 at 153.

11   What process is constitutionally due an inmate placed in segregation depends on

12   whether the placement is disciplinary or administrative.  Toussaint v. McCarthy, 801 F.2d 1080,

13   1099 (9th Cir. 1986).  In Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003), the Court of

14   Appeals determined that California's policy of placing suspected gang members in segregation is

15   an administrative decision, undertaken to preserve order in the prison.  When an inmate is placed

16   in segregation for administrative purposes, due process requires only the following procedures:

17             Prison officials must hold an informal nonadversary hearing within
              a reasonable time after the prisoner is segregated.  The prison
18            officials must inform the prisoner of the charges against the
              prisoner or their reasons for considering segregation.  Prison
19            officials must allow the prisoner to present his views. . . . [D]ue
              process [ ] does not require detailed written notice of charges,
20            representation by counsel or counsel-substitute, an opportunity to
              present witnesses, or a written decision describing the reasons for
21            placing the prisoner in administrative segregation.

22   Toussaint, 801 F.2d at 1100-01 (footnote omitted).  The Toussaint court relied on Hewitt v.

23   Helms, 459 U.S. 460, 476 (1983), receded from on other grounds, Sandin v. Conner, 515 U.S.

24   472 (1995), which found that due process was satisfied when the inmate received notice of the

25   basis for the placement and a fair opportunity for rebuttal.

26   /////

12

1   At each of his hearings, plaintiff was informed of the reason for his placement and

2   allowed to argue that he was not a gang member.  Docket No. 191-3, Ex. A-1 at 170; Docket No.

3   191, Ex. A-1 at 148.  He received the process that was due.  Defendants are entitled to summary

4   judgment on these claims.

5   VI.  Bright Lights

6   As the result of surgery on his eye, plaintiff has a fixed pupil in his right eye,

7   which has produced an intolerance of light.  Docket No. 193, Ex. B-1 at 1 (medical progress

8   note).  He has a medical chrono, which allows him to wear sunglasses at all times; in addition, it

9   has been recommended that he avoid bright lights.  Docket No. 190, Ex. A-1 at 131.  Plaintiff

10  wears sunglasses when outside or inside when the lights are bright; in dim, indoor light, he does

11  not wear the sunglasses.  Docket No. 193-2, Ex. E at 8:1-2, 63:8-12.[6]  Prolonged exposure to

12  bright lights is painful and causes him to lose consciousness.  Id. at 62:23-24.  Even with dark

13  glasses, it is painful for plaintiff to be exposed to bright lights for extended periods of time.  Id. at

14  60:9-15.  Plaintiff also said that if he has his glasses, "there's no problem" if the lights are not

15  dimmed.  Id. at 95:8.

16  A.  November 2002

17  To protest his placement in segregation, plaintiff undertook a hunger strike.

18  Docket No. 193-2, Ex. E at 83:8-9  As a result, he was transferred to the Correctional Treatment

19  Center on November 25, 2002.  Id. at 82:21-23.

20  His cell in CTC had several windows; two faced into CTC, one let in outside

21  light.  Id. at 59:2-11; 56:1-13, 67:8-10.  The cell also had one long overhead light; plaintiff had

22  no control over this light.  Id. at 65:18-21, 66:5, 82:8-9.  The light usually came on at 5:00 or

23  6:00 a.m. and stayed on until 9:00 p.m.  Id. at 74: 6-9.  The policy for CTC, however, required

24

25      [6]  Defendants have provided a copy of the condensed transcript of plaintiff's deposition as
    Exhibit E.  This copy is not certified; however, a courtesy copy of the full deposition has been
26  provided by defendant Rohlfing

13

1  that the overhead lights be on when the food port was opened or when staff members approached

2  a cell door.  Id. at 89:20-25.

3          On November 27, 2002, Dr. Rohlfing wrote an order to dim the lights and the

4  order was placed on the door of plaintiff's cell.  Am. Compl. ¶ 69; Docket No. 223-2, Ex. A-1 at

5  101.  On November 30, at defendant Brown's direction, McGuire took this order off plaintiff's

6  door, directed that the lights not be dimmed and informed Kaptur, who wrote a note directing

7  that the lights be left on.  Docket No. 193-2, Ex. E at 92:8-9; Docket No. 190-4, Ex. A-1 at 138.

8  However, also at Brown's instigation, this sign was replaced on December 4, 2002, with

9  directions that plaintiff be allowed to have his lights dimmed. Docket No. 190-4, Ex. A-1 at 139;

10  Docket No. 223-2 at 10. [7]

11          Prison officials may not substitute their judgment for that of a medical

12  professional without running the risk of violating an inmate's Eighth Amendment rights.

13  Zentmyer v. Kendall County, Illinois, 220 F.3d 805, 812 (7th Cir. 2000); Wakefield v.

14  Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999); Gill v. Mooney, 824 F.2d 192, 196 2d Cir.

15  1987) ("prison officials are more than merely negligent if they deliberately defy the express

16  instructions of a prisoner's doctors.").  Relying on prison policy may not insulate a prison official

17  from liability for deliberate indifference.  Johnson v. Wright, 412 F.3d 398, 450 (2d Cir. 2005).

18  Moreover, continuous exposure to bright lights may violate the Eighth Amendment even if the

19  inmate does not have an underlying medical condition.  Keenan v. Hall, 83 F.3d 1083, 1091 (9th

20  Cir. 1996).

21          In this case, defendant Brown has presented nothing but hearsay suggesting that

22  he ordered that the procedures for administrative segregation – calling for bright lights only when

23  the food slot was opened or staff approached a cell –  be followed.  It is true that the documents

24  from plaintiff's central file were submitted with the declaration of the custodian of records,

25  ─────────────

26          [7]  The court earlier granted the motion to dismiss filed by defendants Kaptur and
McGuire.  See Docket No. 163.

1  certifying that the records are regularly kept by the California Department of Corrections and

2  Rehabilitation (CDCR), that the entries are made by those with personal knowledge close in time

3  to the events recorded.  Docket No. 188-3, Ex. A ¶¶ 2-3 (Declaration of V. Meyers).  However,

4  the portion of the records upon which defendant Brown relies is a report from Kaptur, recounting

5  what Brown told him to do.  Defendants have not shown that this statement falls within the

6  hearsay exception for records of regularly conducted activity.  Fed. R. Ev. 803(6).  Accordingly,

7  defendant Brown has not borne the burden of showing the absence of genuine issues of material

8  fact by the use of specific allegations and admissible evidence, because he has failed to offer any

9  admissible evidence in support of this portion of the motion.  Adickes v. S.H. Kress, 398 U.S.

10  144, 160 (1970); Nissan Fire & Marine Ins. Co, Ltd. v. Fritz Companies, Inc., 210 F.3d 1099,

11  1105 (9th Cir. 2000).

12          Defendant Brown also argues he is entitled to qualified immunity.  In determining

13  whether a governmental officer is immune from suit based on the doctrine of qualified immunity,

14  the court considers two questions.  One, taken in the light most favorable to the party asserting

15  the injury, is whether the facts alleged show the officer's conduct violated a constitutional right?

16  Saucier v. Katz, 533 U.S. 194, 201 (2001).[8]  If this question is entertained, a negative answer

17  ends the analysis, with qualified immunity protecting defendant from liability.  Id.  A second

18  question the court must address is "whether the right was clearly established."  Id.  "If the law did

19  not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary

20  judgment based on qualified immunity is appropriate."  Id. at 202.  The reasonableness of a

21  defendant's conduct is judged "against the backdrop of the law at the time of the conduct."

22  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

23

24          [8]  The Supreme Court recently has receded from Saucier in providing that the two-step
procedure it mandated there should not be regarded as an inflexible requirement; rather courts
25  may exercise discretion in determining which of Saucier's two prongs to address first in light of
the circumstances of a particular case.  See Pearson v. Callahan, ___ S. Ct. ___, 2009 WL
26  128768 (Jan. 21, 2009).  In these findings and recommendations, the court has exercised its
discretion and addressed the prongs in the order set forth above.

1    The law governing a prison official's responsibilities to follow a specific doctor's

2    orders under the circumstances was "clearly established" when plaintiff alleges Brown overrode

3    Rohlfing's order that his cell lights be dimmed.  In Estelle v. Gamble, 429 U.S. 97, 105 (1976),

4    the Supreme Court observed that deliberate indifference may be shown when prison officials

5    "intentionally interfere[ ] with treatment once prescribed" by a physician.  Brown is not entitled

6    to qualified immunity.

7                     B.  February 2005

8    In February 2005, plaintiff started another hunger strike and was again taken to

9    CTC.  Docket No. 19302, Ex. E at 24-33.  On February 4, plaintiff told Doctor James that he had

10   retinal detachment in and a history of surgery on his left eye.  Docket No. 186-4 at 2 ¶ 5.

11   Plaintiff was wearing dark glasses, but complained that he had headaches and that the light hurt

12   his eyes.  Id. at 2 ¶ 5 & Ex. B 10.  When plaintiff ran out of Tylenol on February 16, he again

13   complained of headaches.  Id. at 2-4 ¶ 7 & Ex. E at16.  Plaintiff did not complain of dizziness or

14   headache when he ended his hunger strike on February 18, 2005.  Id. at 3 ¶ 8.  Dr. James believed

15   that plaintiff's headaches could have been the result of his hunger strike or stress.  Id. at 2 ¶ 6.

16   From February 4 through February 11, 2005, the lights were on in plaintiff's cell

17   for sixteen hours a day. Am. Compl. ¶ 146; Docket No. 193-2, Ex. E at 24:16-25:8.  According

18   to defendant Rohlfing, he examined plaintiff on February 5 and plaintiff complained that the

19   overhead light was not dimmed.  Docket No. 186-4 at 22 ¶ 6.  Rohlfing was aware that plaintiff

20   had previously been issued a chrono allowing him to wear dark glasses indoors and to have dim

21   lights; this chrono did not permit plaintiff to have dim lights at all times.  Id. at 22 ¶ 6.  Rohlfing

22   believed that plaintiff's headache might have been the result of his hunger strike or of stress.  Id.

23   Rohlfing examined plaintiff again on February 7, 2005 and determined that

24   plaintiff was in good health.  Id. at 23 ¶ 7 & Ex. L at 25.  Plaintiff had his dark glasses and was

25   not in discomfort.  Id. at 23 ¶ 7 & Ex. M at 27.  Because Rohlfing was not the admitting

26   physician, it was not his responsibility to review plaintiff's complete medical file, but rather only

1   to monitor plaintiff's response to his hunger strike.  Id. at 23 ¶ 8.

2          According to plaintiff,  Rohlfing initially said he did not know why the lights were

3   not dimmed; in their second conversation, Rohlfing told plaintiff the lights would not be dimmed

4   this time.  Docket No. 193-2, Ex. E at 26:23-27:13, 29:11.  However, after plaintiff's seventh day

5   in CTC, Rohlfing ordered the lights dimmed.  Id. at 29:19-20.

6          As noted above, in Estelle, 429 U.S. at 106, the Supreme Court held that

7   inadequate medical care did not constitute cruel and unusual punishment cognizable under

8   section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious

9   medical needs."  A showing of merely inadvertent or even negligent medical care is not enough

10  to establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d

11  1124, 1130 (9th Cir. 1998).

12              In the Ninth Circuit, the test for deliberate indifference consists of
                two parts. First, the plaintiff must show a serious medical need by
13              demonstrating that failure to treat a prisoner's condition could
                result in further significant injury or the 'unnecessary and wanton
14              infliction of pain."  Second, the plaintiff must show the defendant's
                response to the need was deliberately indifferent.  This second
15              prong-defendant's response to the need was deliberately
                indifferent-is satisfied by showing (a) a purposeful act or failure to
16              respond to a prisoner's pain or possible medical need and (b) harm
                caused by the indifference. Indifference may appear when prison
17              officials deny, delay or intentionally interfere with medical
                treatment, or it may be shown by the way in which prison
18              physicians provide medical care.

19  Jett v. Penner, 439 F.3d at 1096 (internal citations & quotations omitted); see also McGuckin v.

20  Smith, 974 F.2d 1050, 1060 (9th Cir.1992), overruled in part on other grounds, WMX

21  Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.1997).

22          Unnecessary continuation of pain may constitute the "harm" necessary to establish

23  an Eighth Amendment violation from delay in providing medical care.  McGuckin, 974 F.2d at

24  1062.

25          Here, defendant Rohlfing is entitled to summary judgment.  Although he was

26  aware of plaintiff's need for dim lights or other protection for his eyes, as shown by his actions in

17

1   2002, he has presented evidence showing that he and Doctor James believed plaintiff's

2   headaches could have been caused by the hunger strike rather than by his exposure to lights.  He

3   has also presented evidence showing that plaintiff had his dark glasses when Rohlfing saw him.

4   Docket No. 186-4 at 23 ¶ 7; id., Ex. M at 27.  That his determination may have been wrong does

5   not demonstrate he was deliberately indifferent to plaintiff's medical needs.

6   VII.  Retaliation

7          Retaliatory actions taken against a prisoner for exercising his First Amendment

8   rights violate the constitution whether or not the underlying misconduct would establish a

9   constitutional violation.

10         Within the prison context, a viable claim of First Amendment
           retaliation entails five basic elements: (1) An assertion that a state
11         actor took some adverse action against an inmate (2) because of (3)
           that prisoner's protected conduct, and that such action (4) chilled
12         the inmate's exercise of his First Amendment rights, and (5) the
           action did not reasonably advance a legitimate correctional goal.

13

14   Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

15         An allegation of harm, rather than of chill, may be a sufficient basis for a claim of

16   retaliation.  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (prison transfer); Valandingham

17   v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir.1989) (inmate labeled a snitch and approached by

18   other inmates and threatened with harm as a result); Rhodes, 408 F.3d at 568 (arbitrary

19   confiscation and destruction of property, initiation of a prison transfer, and assault).

20      A.  Library Access And Photocopying

21         Plaintiff alleges that defendant Cobb asked him to leave the library on June 10,

22   2003, even though he was on the library list, and then wrote a false rules violation report when

23   plaintiff asked for more time in the library.  Am. Compl. ¶ 90.  Later, on August 27, 2003, when

24   plaintiff attempted to have his complaint copied, defendant Cobb confiscated the documents and

25   refused to copy it when she saw she was listed as a defendant.  Id. ¶ 91.  On September 3, 2003,

26   /////

1  defendant Cox refused to copy plaintiff's exhibits when she saw that Cook was a defendant in the

2  lawsuit. Id. ¶ 92.

3          According to defendant Cobb, she asked plaintiff to leave the library on June 10

4  because once in the library, he "immediately began to complain about [his] lack of library

5  access." Defendant Cobb asked him to leave the library because rather than work on his case, he

6  expressed his opinions vociferously. Docket No. 191-3, Ex. A-1 at 179. According to other

7  records in plaintiff's file, defendants Cobb and Cox refused to make copies of plaintiff's lawsuit

8  because it did not comply with the policies about number and type of materials to be copied.

9  Docket No. 191-2, Ex. A-1 at 160.[9]

10          Defendants have proffered evidence that their actions advanced legitimate

11  correctional goals, namely maintaining order in the prison law library and preventing the abuse of

12  photocopy privileges. See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994). They are

13  entitled to summary judgment.

14                    B.  Labeling Plaintiff As A Snitch

15          Plaintiff alleges that "J. Eder and B. Fleming . . . was going around the yard and

16  Facility 'C' that plaintiff was a 'snitch' and should be rolled up." Am. Compl. ¶ 113. He claims

17  he was confronted on the yard and asked to produce his paperwork or be attacked. Am. Compl.

18  ¶ 114.

19          Defendants Fleming and Eder have submitted declarations, each averring that he

20  did not identify plaintiff as a "snitch" to any other inmate and did not tell any inmate that plaintiff

21  should be harmed. Docket No. 193, Ex. C ¶¶ 2, 3; Docket No. 193-2, Ex. G ¶¶ 5, 6. Plaintiff has

22

23          [9]  Defendants have not provided declarations from Cobb or Cox, but rather have relied on
    materials contained in plaintiff's central file, including a chrono prepared by Cobb and the
24  response to a grievance plaintiff pursued after being denied his requested photocopies. Plaintiff
    has not objected and has not responded to this portion of the motion for summary judgment.
25  This evidence, suggesting that Cobb's and Cox's actions were based on legitimate penological
    purposes, raises the question whether plaintiff can establish his prima facie case. Plaintiff has
26  not rebutted this showing. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

1   submitted declarations from inmates Lee, Pettis, McNeal, Womack, Secrease and Burton, all of

2   whom aver they heard rumors or from other inmates that defendant Fleming had called plaintiff a

3   snitch.  Docket No. 223-6 at 118, 120, 121, 123, 125.  None of these inmates himself heard

4   Fleming or Eder make any such statements.  Id.  This hearsay evidence will not defeat

5   defendants' motion for summary judgment.  Kim v. United States, 121 F.3d 1269, 1276-77 (9th

6   Cir. 1997) (affidavit in opposition to summary judgment must be based on personal knowledge

7   and inadmissible hearsay cannot defeat motion for summary judgment).

8                      C.  Accusing Plaintiff Of Conspiring To Assault An Officer

9             On January 29, 2005, plaintiff was removed from population and placed in

10   administrative segregation because of information suggesting he was involved in a conspiracy to

11   assault defendant Fleming.  Docket No. 191-4, Ex. A-1 at 184; Docket No. 223-6, Ex. C at 64-

12   65.  Plaintiff alleges this removal was undertaken by defendants Peck and Miranda in retaliation

13   for his preparation of a civil rights complaint and that the allegations were false.  Am. Compl.

14   ¶ 116.

15            On February 3, 2005, plaintiff appeared before an Institutional Classification

16   Committee, comprised of defendants Armoskus and Vanderville; Dreith presented the case to the

17   committee.  Docket No. 191-4, Ex. A-1 at 223.  Plaintiff asked to be allowed to call witnesses

18   and present documentary evidence and asked for a staff assistant and for a copy of the evidence

19   against him; this request was denied.  Am. Compl. ¶ 117.

20             On February 22, 2005, based on confidential information, defendant Peck

21   charged plaintiff with a disciplinary violation alleging that plaintiff planned to assault Fleming.

22   Docket No. 193-2, Ex. H at 51; Docket No. 222, Ex. A-2 at 10-11 (sealed); Docket No. 223-6,

23   Ex. C at 66-68; Am. Compl. ¶¶ 119, 126, 127.  The next day, plaintiff was charged with another

24   rules violation for refusing to accept a cell mate.  Docket No. 192-2, Ex. A-1 at 225.

25            In March, April and May 2005, plaintiff told committees comprised of defendants

26   Felker, Armoskus, Dreith and Kopec that he wanted to call twenty-three inmate and twenty one

1   non-inmate witnesses and presented ninety five pages of documentary evidence proving his

2   innocence.  Am. Compl. ¶¶ 128, 130, 132, 139.  These committees approved plaintiff's retention

3   in administrative segregation.

4          On May 28, 2005, plaintiff was found guilty of the rules violation, although it was

5   later dismissed because time limits had not been met.  Docket No. 192-5, Ex. A-1 at 260.  He

6   was, however, retained in administrative segregation.  Id.  Plaintiff filed a grievance, which was

7   denied by defendants Wong and Felker.  Docket No. 192-3, Ex. A-1 at 237; Docket No. 192-4,

8   Ex. A-1 at 244.

9          On June 23, 2005, a classification committee recommended that plaintiff be

10  retained in administrative segregation pending transfer out of HDSP because his presence in

11  general population might aggravate an already volatile situation.  Docket No. 192-5, Ex. A-1 at

12  260-261.  Support for this determination included plaintiff's adherence to the tenets of the United

13  Alkebulan Nation.  Docket No. 189-2, Ex. A-1 at 64; Docket No. 193, Ex. D, No. 4c; Docket No.

14  192-5, Ex. A-1 at 254 ("Christians, Muslims, Catholics, Gang members, drug users and sellers,

15  etc., are enemies of the UAN").

16         Plaintiff was transferred to Calipatria State Prison on October 27, 2005.  Docket

17  No. 188-3, Ex. A-1 at 4.

18         Plaintiff has submitted a number of declarations from inmates, all of whom aver

19  they never heard plaintiff threaten to harm Fleming, but rather that plaintiff had expressed the

20  hope he could recover money damages from Fleming as a result of this law suit.  See Docket No.

21  223-6, Ex. C-1 at 117-126.

22         Despite this evidence, plaintiff has not rebutted defendants' showing that they had

23  evidence suggesting plaintiff's animus toward Fleming would take a physical form and so, for

24  the safety of Fleming and the institution, placed him in administrative segregation.  This

25  evidence, submitted under seal, provides corroborated information about plaintiff's intention to

26  harm Fleming, information that could rationally support the initial determination to put plaintiff

1   in administrative segregation and the later ICC decisions to retain him in segregated housing

2   while the investigation continued.  Plaintiff has failed to rebut defendants' suggestion that their

3   actions were not based on plaintiff's litigation activities and their showing that his placement in

4   segregation advanced a legitimate correctional goal.

5          Moreover, plaintiff has not presented any evidence suggesting the decision to

6   maintain him in segregation, after the resolution of the disciplinary charges stemming from the

7   plan against Fleming and from plaintiff's refusal to accept a cell mate, was based on plaintiff's

8   exercise of his First Amendment right or that it did not advance the legitimate correctional goal

9   of maintaining institutional calm.  Schroeder v. McDonald, 55 F.3d 454, 461-62 (9th Cir. 1995).

10  VIII.  Plaintiff's Motions To Introduce Additional Evidence

11          On October 1 and 9, 2008, plaintiff submitted additional evidence in opposition to

12  the two motions for summary judgment.  Docket Nos. 231 & 232.  On October 20, 2008, the

13  court ordered them stricken, but gave plaintiff leave to file a motion in support of his request.  He

14  has filed two such motions, a response to the court's order and a letter of explanation.

15          In his motions, plaintiff explains that in September, he learned of the existence of

16  several sections of the Departmental Operations Manual (DOM) issued by CDCR, which govern

17  employee discipline, the employee code of conduct, personnel services, the investigation of

18  employees, and the levels of discipline that would be meted out to employees who do things such

19  as falsify reports.  Docket No. 235 at 1-4; Docket No. 238 at 2-5. He argues that these materials

20  are relevant to show that "defendants admitted actions and omissions have varying degrees of

21  disciplinary penalties," which would have been imposed had plaintiff's grievances been

22  processed adequately; they also demonstrate, he says, that those defendants whose investigation

23  into plaintiff's complaints was inadequate understood this inadequacy was itself misconduct.

24  Docket No. 235 at 3, 4.  He further argues these materials will show that defendants lied in their

25  discovery responses.  Id. at 5.  He contends "the only disputes in this case are the reasons for the

26  actions taken and plaintiff's exhibit evidence establishes intent."  Docket No. 237 ¶ 8.

1    Plaintiff avers these newly submitted materials were not in the DOM maintained

2  in his institution's law library and he was able to secure them from another prisoner after the

3  latter heard him discussing his civil suit.  Docket No. 237 ¶ 3; Docket No. 238 ¶ 3.

4    Although plaintiff has explained why he was unable to secure the materials

5  earlier, he has not shown they create a factual dispute that would alter this court's resolution of

6  the pending motions for summary judgment.  Even if this court assumes that all the defendants

7  were aware they could be disciplined for taking improper actions against the plaintiff, this does

8  not establish intent or demonstrate the defendants lied in their discovery responses, as plaintiff

9  claims.  The court will not consider this additional evidence.

10    IT IS HEREBY ORDERED that

11    1.  Defendant Rohlfing's motion to strike (docket no. 227) is granted and

12  plaintiff's sur-reply (docket no. 226) is stricken from the record;

13    2.  Within thirty days of the date of this order, plaintiff shall show cause why

14  sanctions should not be imposed for his filing many irrelevant exhibits as part of his opposition

15  to the motions for summary judgment.  This pleading must be no longer than ten pages and may

16  not include exhibits; and

17    3.  Plaintiff's motions to introduce additional evidence in opposition to the

18  motions for summary judgment (docket nos. 235 & 238) are denied.

19    IT IS HEREBY RECOMMENDED that

20    1.  This action be dismissed as to defendants Lopez and Mericle;

21    2.  Defendants' motion for summary judgment (docket no. 188) be denied as to

22  defendant Brown but granted as to the remaining defendants; and

23    3.  Defendant Rohlfing's motion for summary judgment (docket no. 186) be

24  granted.

25    These findings and recommendations are submitted to the United States District

26  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

23

1   days after being served with these findings and recommendations, any party may file written

2   objections with the court and serve a copy on all parties.  Such a document should be captioned

3   "Objections to Magistrate Judge's Findings and Recommendations."  **The page limits**

4   **previously imposed on plaintiff apply to his objections.**

5           Any reply to the objections shall be served and filed within ten days after service

6   of the objections.  The parties are advised that failure to file objections within the specified time

7   may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

8   Cir. 1991).

9   DATED:  February 4, 2009.

10

11   2 /jord1820.57

                                          U.S. MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26