IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN JORDAN,

        Plaintiff,                       No. CIV S-03-1820 LKK KJM P

    vs.

CAL A. TERHUNE, et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action. On February 5, 2009, this court recommended that motions for summary judgment filed by defendants Rohlfing, Armoskus, Boitano, Cobb, Cox, Dreith, Eder, Felker, Fleming, Kopec, McCraw, Miranda, Platt, Vanderville, Wong and Wright be granted, but that the motion filed by defendant Brown be denied. The district court adopted this recommendation on September 21, 2009, but allowed Brown to file a renewed motion for summary judgment. That motion is currently pending before the court.

I. <u>Summary Judgment Standards</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

1  for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.
2  1987).

3        In the endeavor to establish the existence of a factual dispute, the opposing party
4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed
5  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the
6  truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to
7  'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
8  trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on
9  1963 amendments).

10        In resolving the summary judgment motion, the court examines the pleadings,
11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.
12  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477
13  U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court
14  must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless,
15  inferences are not drawn out of the air, and it is the opposing party's obligation to produce a
16  factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines,
17  602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally,
18  to demonstrate a genuine issue, the opposing party "must do more than simply show that there is
19  some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could
20  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for
21  trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22        On August 17, 2006, the court advised plaintiff of the requirements for opposing a
23  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
24  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.
25  Eikenberry, 849 F.2d 409 (9th Cir. 1988).
26  /////

II. <u>Undisputed Facts</u>

As the result of surgery on his eye, plaintiff has a fixed pupil in his right eye, which has rendered him sensitive to light. Docket No. 193 at 7[1] (Ex. B-1 at 1; medical progress note). He has a medical chrono, which allows him to wear sunglasses at all times; in addition, it has been recommended that he avoid bright lights. Docket No. 223-2 at 3. Plaintiff wears sunglasses when outside or inside when the lights are bright; in dim, indoor light, he does not wear the sunglasses. Deposition of John Jordan (Jordan Depo.) at 8:1-2, 63:8-12.[2] Prolonged exposure to bright lights is painful and causes him to lose consciousness. <u>Id</u>. at 62:23-24. Even with dark glasses, it is painful for plaintiff to be exposed to bright lights for extended periods of time. <u>Id</u>. at 60:9-15. On November 19, 2002, Dr. Baron instructed plaintiff to avoid bright lights and renewed a chrono that allowed plaintiff to wear dark glasses even indoors. Docket No. 190-4 at 8 (Ex. A-1 at 131).

To protest his placement in segregation for investigation of gang affiliation, plaintiff undertook a hunger strike. Jordan Depo. at 83:8-9. As a result, he was transferred to the Correctional Treatment Center on November 25, 2002. <u>Id</u>. at 82:21-23. His cell in CTC had one long overhead light; plaintiff had no control over this light. <u>Id</u>. at 65:18-21, 66:5, 82:8-9. The light usually came on at 5:00 or 6:00 a.m. and stayed on until 9:00 p.m. <u>Id</u>. at 74:6-9. The policy for CTC required that the overhead lights be on when the food port was opened or when staff members approached a cell door. <u>Id</u>. at 89:20-25, 90:3-4; MSJ, Decl. of Donald J. Brown (Brown Decl.; Docket No. 247-2) ¶ 2. "The policy provided that all other times, the cell light could be dimmed, if ordered for medical reasons." Brown Decl. ¶ 2.

On November 27, 2002, Dr. Rohlfing wrote an order directing that the lights in plaintiff's cell be dimmed and the order was placed on the door of plaintiff's cell. Am. Compl.

---

[1] Page references are to those assigned by the court's CM/ECF system.

[2] A courtesy copy of the deposition was provided by defendant Rohlfing in connection with the prior motion for summary judgment.

4

1 ¶ 69; Docket No. 223-1 at 101.

2 On November 30, 2002, Brown was serving as Watch Commander. Officer McGuire told him that medical staff had posted a note on plaintiff's cell, saying that the lights were to remain off at all times; the staff were interpreting that to mean that the lights should remain off even when the food port was being opened. Brown Decl. ¶ 2; Docket No. 223-2 at 9.

Brown told McGuire "that officers in the CTC were to follow the policy" and asked McGuire to contact him if medical staff disagreed. Brown Decl. ¶ 2. Brown had not seen the order that was the basis for the note and had not previously encountered such an order. He believed that an inmate's medical needs and the institution's need for security could be accommodated by allowing correctional staff to use bright lights when necessary for security. Id. ¶ 3.[3]

McGuire reported this to Correctional Officer Kaptur, who wrote a note directing that the lights be left on. Jordan Depo. at 92:8-9; Docket No. 190-3 at 15 (Ex. A-1 at 139). After this, the lights in plaintiff's cell were left on continuously. Jordan Depo. at 92:8. Plaintiff complained to Dr. Rohlfing. Id. at 92:4. Although Brown avers that no one told him that anyone from the medical staff disagreed with his action, he rescinded his prior order and on December 2, 2002, directed that plaintiff's lights were to remain dim except when staff approached the door. Id. at 94:1-4; Brown Decl. ¶ 3. A note was placed on plaintiff's cell door stating that the lights could be dimmed "per Lt. Brown." Docket No. 190-3 at 15 (Ex. A-1 at 139).

/////
/////

---

[3] Plaintiff contends that there is no policy requiring that lights be left on for security reasons and that correctional officers carry flashlights so that they can see into dim cells. Opposition (Opp'n) at 11-12 ¶¶ 12-13. As he does not describe the basis for this knowledge, the court disregards this contention. (There are two copies of the Opposition on the docket; the first appears to be missing a few pages, which are provided with the later-filed copy. The court thus refers to the later-filed document, docket number 254.)

III. <u>Analysis</u>

    A. <u>Deliberate Indifference</u>

In <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care did not constitute cruel and unusual punishment cognizable under section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious medical needs."

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain." Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong-defendant's response to the need was deliberately indifferent- is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

<u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); <u>see also</u> <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1060 (9th Cir.1992), <u>overruled in part on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir.1997).

A medical need is serious if failure to treat the condition could cause further significant injury or the unnecessary and wanton infliction of pain. <u>McGuckin</u>, 974 F.2d at 1059.

Prison officials may not substitute their judgment for that of a medical professional without running the risk of violating an inmate's Eighth Amendment rights. <u>Zentmyer v. Kendall County, Illinois</u>, 220 F.3d 805, 812 (7th Cir. 2000); <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1165 (9th Cir. 1999); <u>Gill v. Mooney</u>, 824 F.2d 192, 196 (2d Cir. 1987) ("prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors."). Relying on prison policy may not insulate a prison official from liability for deliberate indifference. <u>Johnson v. Wright</u>, 412 F.3d 398, 405 (2d Cir. 2005).

/////

1   Defendant Brown does not challenge plaintiff's claim that protecting him from pain
2   from bright lights constitutes a serious medical need. He argues, however, that the evidence
3   "demonstrates a misunderstanding between officers and medical staff as to whether Jordan's cell
4   lights should be dimmed at all times, or whether they could be on bright when necessary for safety
5   and security reasons . . . ." Defs.' Mem. P. & A. in Supp. Mot. for Summ. J. (MSJ; Docket No.
6   247-3) at 5.[4]

7   Neither side has produced a written version of the policy at issue; plaintiff claims
8   that it doesn't exist. Opp'n at 3. Defendant Brown's declaration is ambiguous: he suggests that
9   "policy required that the cell lights be on when, for example, the food port was opened by officers
10  to feed inmates" and "policy provided that at other times, the cell light could be dimmed, if
11  ordered for medical reasons." Brown Decl. ¶ 2. This suggests that the default policy was that
12  lights were to remain on whether or not officers were approaching the door. This is supported by
13  plaintiff's testimony that the lights came on at 6:00 a.m. and stayed on until 9:00 p.m. Jordan
14  Depo. at 74:6-9.

15  When McGuire informed Brown about Dr. Rohlfing's order, Brown assumed that
16  it meant the lights could be on when staff approached the door to an inmate's cell. According to
17  his own declaration, he did not ask who had issued the order and did not himself contact the
18  doctor to determine whether the order in fact meant what it said or whether it was subject to
19  exceptions. In addition, he told McGuire to follow "policy," which McGuire apparently
20  interpreted to mean the policy that required lights to be left on for most of the day. Brown does
21  say he told McGuire to contact Brown "if medical staff disagreed," Brown Decl. ¶ 2, and that he

---

[4] In his statement of undisputed facts, defendant Brown marshals evidence that the medical orders themselves were in conflict, with the first order permitting bright lights to remain on at all times so long as plaintiff had sunglasses, the second ordering the lights to be dimmed at all times, and the third order directing the lights to be dimmed except when staff required brighter lights. Defs.' Statement of Undisputed Facts (Docket No. 247-1), Nos. 9, 10, 16. The court does not consider the first and third orders in reaching its conclusion because defendant has presented no evidence he was aware of them; the evidence he cites shows only that he was told about the second order by McGuire. Brown Decl. ¶¶ 2-3.

was "not advised after . . . November 30, 2002, that medical staff disagreed with what I had instructed." Id. ¶ 3. He also says he had not seen the physician's order. Id. A jury could find that in issuing an ambiguous directive, based on a policy not clearly defined, which could be and in fact was interpreted as countermanding a doctor's order, defendant Brown acted with deliberate indifference. As the Ninth Circuit has said, "allegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference." Wakefield, 177 F.3d at 1165.

B. Qualified Immunity

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court considers two questions. One is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001). A negative answer ends the analysis, with qualified immunity protecting defendant from liability. Id. If a constitutional violation occurred, a court also inquires "whether the right was clearly established." Id. "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202. The district court may decide the order of addressing these questions and answer only the second, in accordance with fairness and efficiency and in light of the circumstances of a particular case. Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808, 821-22 (2009).

As noted above, a reasonable jury could find that defendant Brown was deliberately indifferent to plaintiff's serious medical need. In assessing whether the law at the time of the alleged violation would have put defendant Brown on notice that his conduct would be

/////

unlawful, the court must consider "the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

In Brosseau, the Supreme Court emphasized that "the qualified immunity inquiry must be undertaken in light of the specific context of the case." Id. In that case, the defendant police officer had shot a fleeing felon in the back. Id. The Court found that case law clearly established that in a case involving excessive force "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm," the outcome depends very much on the specific facts of each case. Id. at 197-98, 201. Therefore, the Court held that because the officer's actions fell "in the 'hazy border between excessive and acceptable force,'" the officer was entitled to qualified immunity. Id. at 201 (internal citation omitted).

In this case, in contrast, the law governing a prison official's responsibilities to follow a specific doctor's orders under the circumstances was "clearly established" when plaintiff alleges that defendant Brown directed McGuire to follow the lighting policy. See Saucier, 533 U.S. at 201. While Estelle established the general proposition that prison officials may not act with "deliberate indifference to serious medical needs," it further defined deliberate indifference to include "prison guards intentionally denying or delaying access to medical care," or "intentionally interfering with treatment once prescribed by a physician." 429 U.S. at 104-05, 106. Defendant Brown is not entitled to qualified immunity. A reasonable prison official would have understood that ignoring a doctor's orders could be interpreted as deliberate indifference to an inmate's medical needs.

IT IS HEREBY RECOMMENDED that defendant Brown's renewed motion for summary judgment (docket no. 247) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 30, 2010.

                                      _____
                                      U.S. MAGISTRATE JUDGE

2/jord1820.57(2)